UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| MOSES BOB PESSIMA, <br><br> Plaintiff, <br><br> vs. <br><br> ANTIONETTE KATUMU PESSIMA, *born* Antoinette Katumu Anderson; and STATE OF SOUTH DAKOTA, Division of Child Support, <br><br> Defendants. | 4:25-CV-04240-CCT <br><br><br> **ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS AND § 1915 SCREENING** |

Plaintiff, Moses Bob Pessima, filed a pro se lawsuit. Docket 1. Pessima also filed a motion for leave to proceed in forma pauperis, Docket 2.

## I.    Motion for Leave to Proceed In Forma Pauperis

A federal court may authorize the commencement of any lawsuit without prepayment of fees when an applicant submits an affidavit stating he or she is unable to pay the costs of the lawsuit. 28 U.S.C. § 1915(a)(1). "[I]n forma pauperis status does not require a litigant to demonstrate absolute destitution." *Lee v. McDonald's Corp.*, 231 F.3d 456, 459 (8th Cir. 2000). But in forma pauperis status is a privilege, not a right. *Williams v. McKenzie*, 834 F.2d 152, 154 (8th Cir. 1987). Determining whether an applicant is sufficiently impoverished to qualify to proceed in forma pauperis under § 1915 is committed to the sound discretion of the district court. *Cross v. Gen. Motors Corp.*, 721 F.2d 1152, 1157 (8th Cir. 1983). After review of Pessima's financial

affidavit, this Court finds that he has insufficient funds to pay the filing fee. *See* Docket 2. Thus, Pessima's motion for leave to proceed in forma pauperis, Docket 2, is granted.

## II.   1915 Screening

### A.   Factual Background as Alleged by Pessima

Liberally construing his complaint, Pessima alleges violations of his Fourteenth Amendment equal protection rights, as well as various fraud-related claims. *See generally* Docket 1. These claims stem from the separation of Pessima from his former wife, Antionette Katumu Pessima ("Antionette") and the fraud Pessima alleges to have occurred when calculating subsequent child support payments. *See id.* at 1, 3.

Pessima and Antionette were married in 1998. *Id.* at 5. In 1999, both Pessima and Antionette were living in the United States after moving from Gambia. *Id.* at 6. In June of 1999, Pessima's son was born. *Id.* at 6. As on November 1, 2000, Pessima alleges that he and Antionette were living at the same address with their child. *Id.* at 7. Antionette filed a motion with the Second Judicial Circuit in South Dakota requesting paternity testing, and the testing showed that Pessima was the biological father of his son. *Id.*

Pessima states that he and Antionette "were still living together when the September 11, 2001 incident happened in New York[,]" but states that he later "filed for divorce with this court—claiming 'Mental' torture." *Id.* at 7. According to Pessima, he and Antionette have been divorced since 2007, and "[b]oth parties had since been living separately—with [Antionette] having legal physical

2

custody of the parties' only minor child, born as issues of their marriage—with a stipulated Parenting Time and visitation agreement, according to the South Dakota Parenting Guidelines." *Id.* at 8. Pessima's son is no longer a minor, and Pessima states that he is no longer obligated to pay child support. *Id.* at 9.

While Pessima details various issues he experienced with visiting his son, *see, e.g., id.* at 8–9, and with his marriage in general, *see, e.g., id.* at 6, the crux of his complaint appears to be that Antionette informed him that he owes past-due child support. *Id.* at 3. Pessima alleges that Antionette "knowingly and willfully entered into a marriage for immigration purposes; and filed for divorce from [Pessima] without proper 'Service', only to 'lie' about abuse when none occurred; remarried and again divorced." *Id.* He also alleges that Antionette "[l]ied to the authorities about the 'Start date' of [Pessima's] Child Support obligation as a Claim—when in fact, both [Pessima] and [Antionette] and the parties' only [then] child were actually physically living together at the same residence[.]" *Id.* (final alteration in original). As a result, Pessima claims that he "has since been suffering the pain and loss of some rights and privileges[,]" such as "loss of Parenting Time, the parties' child not graduating from school, now involved in crimes, assault, damage of property, substance abuse[.]" *Id.* Pessima also states that he has suffered "loss of Citizenship, Licenses, no gainful employment according to [his] Caliber, slander, loss of property and money[.]" *Id.* at 3, 8, 9.

3

Pessima alleges that he "has been denied his Constitutional rights to Freedom and Liberty—to enjoy life and deprivation of property[,]" and that he has been "denied the rights to Equal Protection under the Law." *Id.* at 1, 4. Additionally, he alleges that by lying about the "start-date" for child support, the defendants committed fraud. *Id.* at 1, 4, 10. Pessima alleges that he will show that the "'actions' of both Defendants reflect an intentional, willful, malicious, and reckless disregard of [Pessima's] inherent human rights, particularly as an alien[.]" *Id.* at 3.

Pessima seeks the following injunctive relief:

A) Restoration of benefits in Motions to Produce Alien Documents.
B) Restoration of licensing Privileges through [Pessima's] Motions.
C) Guaranteeing [his] 14th Amendment—that [his] person shall not be deprived of life, liberty and property in pursuit of happiness.
D) Guarantee to follow due Process of Law; the right to be heard in a fair trial; Order to Answer not only 25 but all interrogatories.

*Id.* at 3. He also requests "an award of [his] immigration and other eligible benefits, licensing and punitive measures taken against [him]." *Id.* Lastly, Pessima requests a total of $12,488,000.00, which includes pain and suffering beginning in 1998 and the loss of wages from January 2008 to January of 2026. *Id.* at 11.

### B.   Legal Standard

When a district court determines a plaintiff is financially eligible to proceed in forma pauperis under § 1915(a), a court must then determine whether the complaint should be dismissed under § 1915(e)(2)(B). *Martin-Trigona v. Stewart,* 691 F.2d 856, 857 (8th Cir. 1982) (per curiam); *see also Key*

*v. Does*, 217 F. Supp. 3d 1006, 1007 (E.D. Ark. 2016). A court must dismiss claims if they "(i) [are] frivolous or malicious; (ii) fail[] to state a claim on which relief may be granted; or (iii) seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A court when screening under § 1915 must assume as true all facts well pleaded in the complaint. *Est. of Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted). Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); *see also Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam) (citation omitted).

A district court has the duty to examine a pro se complaint "to determine if the allegations provide for relief on any possible theory." *Williams v. Willits*, 853 F.2d 586, 588 (8th Cir. 1988) (citing *Bramlet v. Wilson*, 495 F.2d 714, 716 (8th Cir. 1974)). A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted). If a complaint does not contain these bare essentials, dismissal is appropriate. *See Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985) (citation omitted). *Twombly* requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above

the speculative level on the assumption that all the allegations in the complaint are true[.]" 550 U.S. at 555 (internal citation omitted); *see also Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting that a complaint "must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory" (citing *Twombly*, 550 U.S. at 553–63)). Further, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (internal quotation omitted) (quoting *Twombly*, 550 U.S. at 556).

### C.    Legal Analysis

#### 1.    Claims Against South Dakota Division of Child Support

Pessima brings claims against the South Dakota Division of Child Support (DCS) for fraud and violations of his Fourteenth Amendment equal protection rights. *See* Docket 1 at 1.

The Eleventh Amendment bars suit against a state entity, as opposed to a state official, regardless of whether money damages or injunctive relief is sought. *Cory v. White*, 457 U.S. 85, 90–91 (1982). In determining whether an entity is entitled to Eleventh Amendment immunity, a court examines the powers and characteristics of the entity that was created by state law to determine if it in reality is acting as the state, the degree of local autonomy and control exercised by the entity, and whether the funds to pay an award are derived from the state treasury. *Greenwood v. Ross*, 778 F.2d 448, 453 (8th

Cir. 1985) (citing *Laje v. R.E. Thomason Gen. Hosp.*, 665 F.2d 724, 727 (5th Cir. 1982)).

DCS is a division of the South Dakota Department of Social Services (DSS). *See Child Support*, S.D. Dep't of Soc. Servs., https://dss.sd.gov/childsupport/ (last visited May 14, 2026). DSS was created by the state legislature. *See* SDCL § 1-36-1. DSS, and therefore DCS, is an arm of the State of South Dakota and, as such, is not subject to suit under § 1983. *See Cory*, 457 U.S. at 90–91. Further, Pessima does not allege that the State of South Dakota has waived its immunity. *See Doe v. Nebraska*, 345 F.3d 593, 597 (8th Cir. 2003) ("A state may waive its immunity either by explicitly specifying its intention to subject itself to suit or by voluntarily participating in federal spending programs where Congress expressed a clear intent to condition receipt of federal funds on a state's consent to waive its sovereign immunity." (citing *Atasacadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 n.1 (1985)). Therefore, Pessima's claims against DCS are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and (iii).

### 2. Claims Against Antoinette Pessima

Pessima brings claims against Antoinette for fraud and violations of his Fourteenth Amendment equal protection rights. *See* Docket 1 at 1.

The appropriate vehicle for bringing a claim for a constitutional or federal statutory violation is a suit under 42 U.S.C. § 1983. *See Henley v. Brown*, 686 F.3d 634, 640 (8th Cir. 2012) (stating that § 1983 "serves as a vehicle for 'vindicating federal rights elsewhere conferred by those parts of the United

States Constitution and federal statutes that it describes.'" (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted).

A private individual may be characterized as a state actor "if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (citation modified). Therefore, a private party may be held liable under § 1983 if the private party "is a willful participant in joint action with the State or its agents." *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980). "[A] plaintiff seeking to hold a private party liable under § 1983 must allege, at the very least, that there was a mutual understanding, or a meeting of the minds, between the private party and the state actor." *Mershon v. Beasley*, 994 F.2d 449, 451 (8th Cir. 1993). Conclusory allegations of conspiracy are insufficient. *Manis v. Sterling*, 862 F.2d 679, 681 (8th Cir. 1988).

Here, Pessima alleges no facts demonstrating that Antionette was a participant in joint action with the state, or that there existed such a close nexus between the state and Antionette such that Antionette's action could be fairly attributed to the state. Therefore, any claims Pessima intends to assert against Antionette for violations of the constitution or federal statutory rights

8

are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

Additionally, Pessima alleges that Antionette committed fraud[1] when she "[l]ied to the authorities about the 'Start-date' of [Pessima's] Child Support obligation[.]" Docket 1 at 10. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To plead with particularity, the party alleging fraud "must typically identify the 'who, what, where, when, and how' of the alleged fraud." *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (quoting *United States ex rel. Costner v. URS Consultants, Inc.*, 317 F.3d 883, 888 (8th Cir. 2003)). To the extent that Pessima alleges that Antionette participated in child support fraud, he has not pled those claims with particularity. Therefore, Pessima's fraud claims are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii). *See Smith v. Humphrey*, No. 8:24CV271, 2025 WL 1531694, at *3 (D. Neb. May 29, 2025) (dismissing a fraud claim on screening because the plaintiff's fraud allegations were "too vague to state a claim for relief").

---

[1] Pessima also alleges that Antionette committed "marriage Fraud" when she remarried and then later divorced. Docket 1 at 10. Pessima does not explain how or why this constitutes fraud or how this provides him with a cause of action against Antionette.

This Court declines to provide Pessima with an opportunity to amend his complaint and plead his fraud claims with more particularity because this Court would likely lack subject-matter jurisdiction over these claims. "[F]ederal courts are courts of limited jurisdiction." *United States v. Afremov*, 611 F.3d 970, 975 (8th Cir. 2010). Federal district courts have jurisdiction over two main kinds of cases: "diversity cases—suits between citizens of different States as to any matter valued at more than $75,000. *See* 28 U.S.C. § 1332(a). And they have power to decide federal-question cases—suits 'arising under' federal law. § 1331." *Badgerow v. Walters*, 596 U.S. 1, 8 (2022). Because Antionette and Pessima are both citizens of South Dakota, *see* Docket 1 at 1, Pessima has not established diversity jurisdiction. *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978) ("diversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff"). Pessima's fraud claims are related to state child support payments, and he does not allege that his fraud claims arise under any federal statute. Therefore, he has also failed to establish federal-question jurisdiction.

## III.   Conclusion

Thus, it is ORDERED:

1.   That Pessima's motion for leave to proceed in forma pauperis, Docket 2, is granted.

2.   That Pessima's claims against DCS are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and (iii).

3.    That Pessima's claims against Antionette Pessima are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

Dated May 19, 2026.

BY THE COURT:

/s/ *Camela C. Theeler*

CAMELA C. THEELER
UNITED STATES DISTRICT JUDGE

11